### S. M. LONG v. THE STATE.

*No. 70. Decided May 10.*

1. **Change of Venue—Affidavits of Compurgators.**—On an application for a change of venue, where the State had filed controverting affidavits attacking the means of knowledge of the compurgators, and defendant offered and proposed to file additional affidavits of other compurgators in support of his motion, which was refused because too late, and defendant then asked leave to file second motion for change of venue, attaching the affidavits of the new compurgators, and this application and affidavits being also stricken out on motion of State counsel, upon the ground that issue had already been joined upon the original motion for change of venue: *Held*, that inasmuch as there was a full investigation of the question whether appellant could obtain a fair and impartial trial in the county, and upon which investigation the said compurgators testified, no possible injury to appellant is made to appear from striking out these supporting affidavits, filed after issue joined.

2. **Biased and Prejudiced Juror.**— On motion for a new trial, based upon bias and prejudice of a juror, where it was shown, by the testimony of two witnesses, that some months before the trial the juror and defendant had had a difficulty, after which they heard the juror abuse the defendant, and state in effect, that " defendant had a case in court, and that he hoped that when the son-of-a-bitch was tried he could get on the jury, and if he did he would send him (defendant) to the penitentiary." And it further appearing that these statements of the juror were unknown to defendant, and that he did not know that the juror harbored ill feeling toward him on account of their old difficulty until after the trial: *Held*, that the new trial should have been granted on account of the bias and prejudice of the juror.

APPEAL from District Court of Franklin. Tried below before Hon. JOHN L. SHEPPARD.

The appellant, S. M. Long, was convicted of felonious embezzlement on an indictment charging that he was the attorney in fact of one J. M. Morton, and that he embezzled $140 in money belonging to said Morton, which money had come into the possession and was under the care of said Long by virtue of his agency as such attorney in fact.

When the State announced ready for trial, the defendant presented an application for change of venue, supported by the affidavit of two compurgators. The State's counsel asked and obtained a postponement of

the case until the next day, for the purpose of obtaining and filing a controverting affidavit. On the next morning, before the case was called, the State's counsel filed the controverting affidavit of James Williams, attacking the means of knowledge of the compurgators. At the time this controverting affidavit was filed, Mr. Glass, one of the defendant's attorneys, was engaged, in the presence of the court and counsel for the State, in writing the affidavit of P. P. Anderson, J. A. Castle, and K. M. Barrett, additional compurgators, in support of defendant's motion for change of venue. Mr. Glass had previously notified the State's counsel that he would procure additional compurgators, and so stated in open court, the statement not being denied. This affidavit was made and filed within fifteen minutes after the controverting affidavit of Williams was filed, and before the case was again called for trial. When the case was called, the State's counsel orally moved the court (afterwards writing and filing his motion) to strike out the additional affidavit of Anderson, Castle, and Barrett, because too late, being filed after the controverting affidavit of Williams was filed. The court sustained the State's motion. The defendant then asked leave to prepare and file a second motion to change the venue, based on the affidavit which had been stricken out, which leave was granted by the court, without prejudice to the State. The defendant then filed a new motion to change the venue, attaching the affidavit of Anderson, Castle, and Barrett as compurgators. The State's counsel then moved the court to strike out this application and affidavit, on the ground that issue had already been joined on the original motion for change of venue, which motion was sustained by the court, and the court proceeded to hear evidence. To all this the defendant excepted.

At his trial, defendant was convicted, and his punishment assessed at two years confinement in the penitentiary. After his conviction, defendant filed a motion and amended motion for a new trial, which said amended motion is as follows:

"Now comes the defendant, and in addition to the grounds set up in his original motion for new trial, filed herein, amending said motion, says that the juror Tobe Law was disqualified by reason of prejudice against defendant, and was influenced by said prejudice in his verdict, and that defendant has not had a fair and impartial trial; and defendant here attaches the affidavit of J. C. Blocker and W. R. Ryburn in support hereof, and prays that the same be considered and that a new trial be granted.

"Defendant further says, that he did have a dispute with said Law, in the presence of said Blocker and Ryburn, about the 14th of August, 1892, but defendant never heard of said Law making the statements mentioned in the affidavit, and did not know that the said Law had any ill feeling toward defendant until after the trial of this cause." Sworn to by the defendant.

" Before me, the undersigned authority, personally came J. C. Blocker and W. R. Ryburn, resident citizens of Franklin County, Texas, who, being each by me duly sworn, on their oaths depose and say, that about the 14th day of August, 1892, in Franklin County, affiants heard a dispute or quarrel between the defendant, S. M. Long, and the juror Tobe Law, in which both were angry, but Law was the aggressor; that after they separated, and defendant Long had gone away, the said Law abused defendant Long, and said, in substance and effect, ' that Long had a case in court, and that he (Law) hoped when the son-of-a-bitch (meaning defendant) was tried, that he (Long) could get on the jury, and if he did he would send him (defendant) to the penitentiary;' that he (Law) repeated this statement more than once.

"Affiants further state, that neither of them ever informed defendant nor his counsel of these statements made by said Law, nor any other person, until after the trial had commenced, when affiants told Mr. Josh Caudle that the defendant would be convicted or there would be a hung jury, as Law was on the jury, and told said Caudle about said statements made by said Law.

[Signed]                                         " J. C. BLOCKER,
                                                 " W. R. RYBURN.


" Sworn to and subscribed before me, this 26th day of November, 1892.
                                        " J. J. MORRIS, District Clerk.
" By R. W. HOLBROOK, Deputy."


A statement of the facts is not called for by the rulings of the court on this appeal.


*Charles S. Todd*, for appellant.—1. The statute prescribes no precise stage of the proceedings at which an application for change of venue shall be filed, and does not require that the supporting affidavits shall be filed simultaneously with the application. This court has held, that an application for change of venue made before the defendant's announcement, though after the State has announced ready for trial, is in proper time. Carr v. The State, 19 Texas Cr. App., 635.

In this case, the supporting affidavit of Anderson, Castle, and Barrett was filed before the defendant was called on to announce. It was being prepared at the time the controverting affidavit of Williams was filed by the State. The court had permitted the State to delay the trial a whole day to get up Williams' affidavit; the district attorney knew that additional compurgators would be procured by defendant. It might have been proper for the court to have allowed the district attorney a further reasonable time to controvert the second supporting affidavit. However, he did not ask it, but moved to strike out the affidavit filed by defend-

ant, because it was filed a few minutes after the affidavit of Williams, the single witness making the controverting affidavit.

The court might have been justified in its action, if it had appeared that defendant was only trifling with the time of the court for delay; but defendant was in good faith asserting a valuable legal right, and it is submitted, that to summarily deprive him of the benefit of the affidavit of three compurgators was an abuse of discretion, for which alone the judgment should be reversed.

If the affidavit was improperly stricken out, then, not having been controverted by the State by attacking the credibility or means of knowledge of the compurgators, defendant was entitled as a matter of right to the change of venue.    Davis v. The State, 19 Texas Cr. App., 201.

2. It was flagrant error to allow the district attorney to call the jurors who had tried and convicted appellant to testify on the hearing of the motion for new trial, as to the deliberations of the jury during their retirement and the conduct of the juror Law.    The issue was simply, was the juror Law prejudiced against defendant, and not whether his prejudice did or did not injure the defendant.    The matters stated in the affidavit of Blocker and Ryburn were substantially admitted by the juror Law, and the statements charged to have been made by him were not denied, his only explananation being that he was drunk and did not remember. Blocker, Ryburn, and Collins swear positively to the statement made by Law, showing a deep-seated prejudice against defendant, and the fact that he was drunk is but an illustration of the ancient maxim, in vino veritas. Could the effect of these facts be neutralized and avoided by calling the jurors to prove that "Law did not show any prejudice in the jury room?" If he felt the prejudice, if he spoke the truth in his cups, would he not have acted just as he did?    How can the court adjudge that a defendant accused of crime was not injured by a juror who had expressed a wish to get on the jury for the express purpose of convicting him?    In Long v. The State, 10 Texas Criminal Appeals, 186, this court said a trial should be above suspicion of unfairness.    In the other cases cited, remarks by a juror showing far less vindictiveness were held to require a new trial. Hanks v. The State, 21 Texas, 527; Henrie v. The State, 41 Texas, 574; Nash v. The State, 2 Texas Cr. App., 362.    In Washburn v. The State, 31 Texas Criminal Reports, 352, a new trial was granted for similar cause; and in a very able and admirable opinion in a very recent case (Sam Massey v. The State, 31 Texas Criminal Reports, 371), this court decides the very point in question, using the following emphatic language:    "But it may be contended that the appellant, notwithstanding all these facts, had a fair trial; that the jury was composed of the very best men, and passed upon the case in a proper spirit, without being influenced by extraneous and improper matter.    *   *   *   Must appellant, under such a state of facts, go with his evidence into the jury room and show that the

jury was uninfluenced, * * * or will the State be permitted to show by jurymen that they were not so influenced? If so, our statutes on the subject of changing the venue are nonsense, sheer foolishness."

*R. L. Henry*, Assistant Attorney-General, for the State.—1. This court will not disturb the action of the trial court in refusing a change of venue, unless there has been a clear abuse of discretion. Myers v. The State, 7 Texas Cr. App., 640; Cox v. The State, 8 Texas Cr. App., 254; Willson's Crim. Stats., sec. 2212.

2. The court did not err in overruling defendant's amended motion for a new trial, based upon the bias and prejudice of the juror Law. Nash v. The State, 2 Texas Cr. App., 362.

SIMKINS, JUDGE.—Appellant was convicted of embezzlement, and his punishment assessed at two years in the penitentiary, from which judgment he appeals.

1. Appellant complains that the court erred in striking out the supporting affidavits of P. P. Anderson, J. A. Castle, and K. M. Barrett, as compurgators, and in overruling the motion for change of venue. We can not see any possible injury to appellant from striking out the supporting affidavits filed by appellant after issue joined. There was a full investigation of the question whether appellant could obtain a fair and impartial trial in Franklin County, in which the said witnesses could and did testify. We do not think the showing for a change of venue was sufficient, and the district judge did not err in overruling it. Myer's case, 7 Texas Cr. App., 640; Cox's case, 8 Texas Cr. App., 254; Willson's Crim. Stats., sec. 2212.

2. The serious question arises from the fact that the juror Tobe Law sat in this case. After the verdict, appellant moved for a new trial, upon the ground that a prejudiced juror sat in the cause, and was influenced by his prejudice in his verdict. He stated further, that he had a dispute with Law, in the presence of Blocker and Ryburn, but never knew that Law had any ill feeling against him, or had made the statements imputed to him, which were made August 14, 1892, prior to the trial on November 24, 1892. It was shown by Blocker and Ryburn, that the juror Law, on the 14th of August, had a quarrel with Long, both parties drinking; and, after Long had left, he remarked that he (Long) had a case in court, and he (Law) hoped that when the son-of-a-bitch was tried he (Law) could get on the jury; that he would send him to the penitentiary. The juror denied the prejudice, but was unable to deny the charge. He stated that he had no recollection of saying so, but remembers he apologized to Long sometime after for language he had used, and Long told him no apology was necessary, as both were drunk, and shook hands with him. Long, however was not aware of the statements made by said juror in his absence, and the juror qualified himself as being without bias for or against

the defendant on his voir dire. Another witness also spoke of some disparaging remarks made of Long by said juror, to the effect that he would not allow him to sleep at his house, but would treat him as a negro. The juror denies any recollection of this conversation also, stating that he was drinking on both occasions referred to, and may have used the language. In further answer, the State proved that the juror's conduct in the jury room manifested no prejudice against appellant.

The affidavits offered in support of the motion for a new trial show with reasonable certainty that one of the jurors who tried this case was not a qualified juror; that apparently, without even having formed a conclusion as to appellant's guilt, he announced his intention of sending him to the penitentiary if he sat on the case, presumably whether he was guilty or innocent. By some coincidence he did get on the jury, and voted as he had threatened to do. His denial of the charges is by no means satisfactory. He remembers the occasion, repeats verbatim the conversation he had with Long, but can not remember a word of the conversation with Ryburn and Blocker, immediately afterwards. Remembers their going home, and Ryburn turning back, yet can not remember his repeated threats of sending appellant to the penitentiary, made to Blocker. He remembers the apology, three weeks afterwards, he made to appellant, yet forgets the conversation with Brice Collins. If such conversations occurred, the juror should not have sat in the cause, and the court should have granted a new trial, or else held, that because appellant is probably guilty, he was not entitled to an impartial jury. We think it is very probable that the threats imputed to the juror were made by him, and the court erred in not granting a new trial. Gilleland's case, 44 Texas, 364; Graham's case, 28 Texas Cr. App., 584. We find no error in any other ruling. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.